UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

| | |
|---|---|
| Kim Gardner,<br><br>   PLAINTIFF,<br><br>v.<br><br>City of St. Louis, St. Louis Police Officers Association, Jeffrey Roorda, Gerard Carmody, Patrick Carmody, Ryann Carmody, & Charles Lane,<br><br>   DEFENDANTS. | Civil Action No. 4:20-CV-00060 JAR |

## Memorandum in Support of
## Defendants Gerard Carmody, Patrick Carmody, & Ryann Carmody's
## Motion to Dismiss

Defendants Gerard Carmody, Patrick Carmody, and Ryann Carmody, in their individual capacities (collectively, "the Carmodys"), state as follows in support of their Motion to Dismiss all counts of Plaintiff Kimberly Gardner's ("Gardner") Amended Complaint under Rule 12(b)(6) of the Federal Rules of Civil Procedure:

I.   *Background*

Gardner brings this three-count Amended Complaint against the Carmodys and others alleging a civil conspiracy under 42 USC § 1985 and violation of civil rights under 42 USC § 1983. Gardner's claims in Count II concern the execution of a February 21, 2019, search warrant, signed by a state court judge. Amended Complaint ¶¶ 85-85, 92, 113. In her Amended Complaint, Gardner does not mention that she filed multiple actions in Missouri

state courts to block the execution of, or to limit the scope of, that search warrant; all of her attempts to stop the search warrant were denied by both the Missouri Court of Appeals and the Missouri Supreme Court. *See State of Missouri ex rel. Gardner v. Mullen, et al.*, ED107691, Mo. App. E.D. 2019; *State of Missouri ex rel. Gardner v. Mullen, et al.,* SC97799, Mo. 2019; *State of Missouri ex rel. Gardner v. Mullen, et al.*, ED107828, Mo. App. E.D. 2019; *State of Missouri ex rel. Gardner v. Mullen, et al.*, SC97893, Mo. 2019.[1]

The Carmodys now move the Court to dismiss all counts against them for failure to state a claim under Rule 12(b)(6). As to Gardner's claims in Counts I-III, she fails to allege facts that overcome the absolute prosecutorial immunity which shields the Carmodys from suit. Alternatively, as to the § 1985 claims in Count I, Gardner fails to state a claim because she does not allege plausible facts to show class-based, invidiously discriminatory animus or a meeting of the minds to deprive her of any federal right. As to Gardner's § 1983 claim in Count II, she did not suffer any violation of her Fourth Amendment rights. Finally, Gardner's § 1983 "Abuse of Process" claim in Count III fails as a matter of law. Thus, Gardner's Amended Complaint fails to state a claim for which relief can be granted against the Carmodys and the Court should dismiss this action.

---

[1] Federal district courts appropriately take judicial notice of state court files when they are relevant to issues in federal court. *See Knutson v. City of Fargo*, 600 F.3d 992, 1000 (8th Cir. 2010).

II.     *Standard of Review*

A complaint must be dismissed if it fails to state a claim upon which relief may be granted. FED.R.CIV.PRO. 12(b)(6). The purpose of a Rule 12(b)(6) motion to dismiss for failure to state a claim is to test the legal sufficiency of the complaint. A motion to dismiss must be granted if the complaint does not contain "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 547 (2007). "Factual allegations must be enough to raise a right to relief above the speculative level." *Id*. at 555. A plaintiff is required to plead more than a mere "unadorned, the-defendant-unlawfully-harmed-me accusation." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). In deciding a motion to dismiss, a court "must take all of the factual allegations in the complaint as true, but should <u>not</u> "accept as true a legal conclusion couched as a factual allegation." *Id*. (citing *Twombly*). "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id*. A plaintiff confronting a motion to dismiss cannot rely on as-yet undiscovered facts to defeat the motion. *See Iqbal*, 556 U.S. at 678-79 (Rule 8 "does not unlock the doors of discovery for a plaintiff armed with nothing more than conclusions.").

III.    *Argument*

A.      Absolute Immunity Warrants Dismissal of All Claims

The Court should dismiss all of Gardner's claims against the Carmodys because they are barred by absolute prosecutorial immunity.

Under well-settled law, a prosecutor enjoys absolute immunity for acts performed "in initiating a prosecution and in presenting the State's case." *Imbler v. Pachtman*, 424

3

U.S. 409, 431 (1976). Prosecutors are absolutely shielded from liability in § 1983 actions when they take actions that are "intimately associated with the judicial phase of the criminal process." *Reasoner v. St. Louis Cty., Mo.*, 447 F.3d 569, 579-80 (8th Cir. 2006); *see also McKay v. City of St. Louis*, No. 4:15-cv-01315-JAR, 2016 U.S. Dist. LEXIS 118914, at *33 (E.D. Mo. Sep. 2, 2016) (dismissing all § 1983 individual-capacity claims against Gardner's predecessor, Jennifer Joyce, because she was entitled to absolute prosecutorial immunity on Rule 12(b)(6) motion). Absolute prosecutorial immunity even surmounts allegations of malice, vindictiveness, or self-interest; prosecutors are absolutely immune even if they present false, misleading, or perjured testimony, or withhold or suppress exculpatory evidence. *Reasonover*, 447 F.3d at 580. "[A]ctions connected with initiation of prosecution, even if those actions are patently improper[,] are immunized." *Powers v. City of Ferguson*, 229 F. Supp. 3d 894, 902 (E.D. Mo. 2017) (quoting *Schenk v. Chavis*, 461 F.3d 1043, 1046 (8th Cir. 2006)).

Prosecutors also enjoy absolute immunity from civil conspiracy claims brought under § 1983 and § 1985 where their alleged participation in the conspiracy consists only of otherwise immune acts. *Reasoner*, 447 F.3d at 580; *Snelling v. Westhoff*, 972 F.2d 199, 200 (8th Cir. 1992). Whether absolute prosecutorial immunity applies turns on "the nature of the function performed, not the identity of the actor who performed it." *Buckley v. Fitzsimmons*, 509 U.S. 259, 269 (1993). In other words, the absolute immunity afforded a prosecutor extends to private attorneys acting in prosecutorial roles, *Powers*, 229 F. Supp. 3d at 899-902 (collecting cases); *Forste v. Hensley*, 405 F. App'x 94, 96 (8th Cir. 2010) (immunity extended to special prosecutor appointed under § 56.110 RSMo.).

4

Here, Gardner alleges that Hon. Michael Mullen of Missouri's Twenty-Second Judicial Circuit appointed the Carmodys—private attorneys—as special prosecutors to investigate potential charges related to the Greitens prosecution. Amended Complaint, ¶¶ 16-18. Under *Powers* and *Forste*, et al., absolute prosecutorial immunity shields the Carmodys from § 1983 and § 1985 claims, just as it would shield Gardner in her individual capacity as Circuit Attorney for such claims brought against her. Further, Gardner's allegations against the Carmodys across her three counts relate to their subjective intent in instituting a criminal investigation, ¶¶ 108-109; 121-122, and their purported "knowingly false representations" related to the search warrant, ¶¶ 113-114. But under *Reasonover*, *Powers*, and others, these allegations ***do not affect*** the application of absolute prosecutorial immunity. Thus, the Court should follow the robust consensus of cases which grant absolute immunity to prosecutors and dismiss all of Gardner's individual-capacity claims against the Carmodys.

B.  Count I: No Conspiracy under 42 USC § 1985(2)-(3)

Even if the Court declines to apply absolute immunity to the Carmodys, the Court should still dismiss Count I against them because Gardner fails to allege plausible facts that state a claim for conspiracy under 42 U.S.C. § 1985(2) and (3).

Those two subsections of the statute outlaw four broad classes of conspiratorial activity: (1) conspiracies to interfere with the administration of justice in *federal* courts (first clause of § 1985(2)); (2) conspiracies to interfere with the administration of justice in *state* courts (second clause of § 1985(2)); (3) private conspiracies to deprive another of "equal protection of the laws" and "equal privileges and immunities under the laws" (first clause

5

of § 1985(3)); and (4) conspiracies to interfere with the right to support candidates in federal elections (second clause of § 1985(3)). *Harrison v. Springdale Water & Sewer Com.*, 780 F.2d 1422, 1429 (8th Cir. 1986)[2] (citing *Kush v. Rutledge*, 460 U.S. 719, 724 (1983)).

Regardless of the subsection, to state a claim for conspiracy under § 1985, a plaintiff "must allege with particularity and specifically demonstrate with material facts that the defendants reached an agreement." *Kelly v. City of Omaha*, 813 F.3d 1070, 1077 (8th Cir. 2016). The Eighth Circuit holds this standard to require that "allegations of a conspiracy [be] pleaded with sufficient specificity and factual support to suggest a meeting of the minds directed toward an unconstitutional action." *Id.* at 1078.

Here, Gardner predicates her claim in Count I on "§ 1985(2)–(3)", but regrettably does not identify which clause within the two subsections that she relies upon. Nonetheless, Gardner fails to state a claim for *any* § 1985 conspiracy in that she pleads no non-conclusory facts to show a meeting of the minds among the alleged conspirators toward an unconstitutional action, and the Court should dismiss under 12(b)(6). However, if the Court opts to delve further, the Carmodys will address the four possible categories of claims under § 1985(2) and (3) in more detail.

---

[2] *Harrison* actually discusses five categories under § 1985, not four. But since Gardner's Amended Complaint expressly does not implicate § 1985(1) (which concerns conspiracies to interfere with the official duties of federal officers), the Carmodys do not address that category here.

1.  Categories 1 & 4: No Federal Officers, Courts, or Elections

The Court should find that Gardner does not state (nor attempt to state) a claim under two of the four categories of conspiratorial activity mentioned above—the first clause of § 1985(2) and the second clause of § 1985(3)—because her allegations do not implicate federal officers, federal court proceedings, or federal elections.

As stated above, *Harrison* provides that these two categories relate only to federal institutions and processes. 780 F.2d at 1429. It is clear from a fair reading of her Amended Complaint that Gardner alleges no federal involvement in the purported conspiracy. Instead, she points the finger only at state and local officials concerning state court proceedings (to wit, the Lane taxpayer suit and the Tisaby criminal matter). Thus, any claim Gardner attempts to state under § 1985(2) and (3) must fall within either the second or the third category mentioned above in that it cannot fall within the others.

2.  Category 2/ Second Clause of § 1985(2)

The Court should find that Gardner fails to state a claim under the third category of conspiratorial activity contemplated in § 1985 because she does not adequately allege any class-based or racially discriminatory animus or any force, intimidation, or threat against her by the Carmodys.

The second clause of § 1985(2) provides a cause of action if:

> two or more persons conspire for the purpose of impeding, hindering, obstructing, or defeating, in any manner, the due course of justice in any State ... with intent to deny to any citizen the equal protection of the laws, or to injure him or his property for lawfully enforcing, or attempting to enforce, the right of any person, or class of persons, to the equal protection of the laws[.]

Because this portion of the statute contains language requiring the conspirators be motivated by an intent to deprive equal protection of the laws, "'there must be some racial, or perhaps otherwise class-based, invidiously discriminatory animus behind the conspirators' action.'" *Kush*, 460 U.S. at 725-26 (quoting *Griffin v. Breckenridge*, 403 U.S. 88, 102 (1971)); *see also Harrison*, 780 at 1429 (Eighth Circuit held that "an allegation of class-based, invidiously discriminatory animus is required to state a claim under the second clause of [§] 1985(2)."). Additionally, § 1985(2) "expressly requires force, intimidation, or threat against persons holding public office, witnesses, or jurors." *Kwoun v. Se. Mo. Prof'l Standards Review Org.*, 622 F. Supp. 520, 528 (E.D. Mo. 1985).

Conversely, a complaint devoid of allegations concerning racial or other class-based hostility fails to state a claim under the second portion of § 1985(2), as does a complaint devoid of factual allegations showing the defendants conspired in an invidiously discriminatory manner against Gardner because of her membership in a class. *Wann v. St. Francois County*, No. 4:15CV895 CDP, 2016 U.S. Dist. LEXIS 28507, at *17-18 (E.D. Mo. Mar. 7, 2016).

Here, Gardner makes no allegations that can plausibly meet the requirement of class-based, invidiously discriminatory animus. Instead, her conspiracy allegations are purely conclusory (¶¶ 109, 110) or a bald recitation of the elements of her cause of action (¶ 108). Even accepting all the allegations in Gardner's Amended Complaint as true, only speculation can fill the gaps therein. Gardner alleges that some of City's employees or former employees made contemptible posts on social media and that she is African

American. Complaint ¶ 5. But she pleads no facts to connect any race-based invidiously discriminatory motivation to any acts done by the Carmodys.

Further, Gardner offers no material and specific allegations of fact to show the Carmodys reached an agreement with any other defendant to violate any of Gardner's federal rights, as required by *Kelly*. In other words, she pleads no facts to demonstrate a meeting of the minds directed toward any unconstitutional action. Instead, Gardner's grounds for her entitlement to relief are no more than the "labels and conclusions, and [] formulaic recitation of the elements of a cause of action" that *Twombly* holds insufficient to survive a 12(b)(6) motion. 550 U.S. at 127.

Moreover, Gardner pleads no facts to show the Carmodys employed "force, intimidation, or threat" against her as required by *Kwoun*. Given its most fair reading, Gardner pleads facts to show that she was threatened (*see* Amended Complaint ¶¶ 71, 81), but Gardner does not allege that any of those threats came from the Carmodys.

Like this case, *Kelly* concerned an appeal of a 12(b)(6) dismissal and allegations under the second clause of § 1985(2) (and the first clause of § 1985(3)). *Kelly* affirmed dismissal of the plaintiff's § 1985 claims because she failed to plead facts showing that the alleged unconstitutional action "arose from an agreement between [defendant] Petersen and [defendant] Denker or other City officials." 813 F.3d at 1078. *Kelly* noted that the plaintiff offered only one instance of any "communication that allegedly took place between Petersen and other officials," which "falls short of demonstrating that defendants reached a 'meeting of minds' directed towards violating [the plaintiff's] constitutional rights." *Id*. (citing to *Nelson v. City of McGehee*, 876 F.2d 56, 59 (8th Cir. 1989)).

The Court should follow *Kelly* in finding that Gardner fails to plead facts to connect the Carmodys's actions to any violation of Gardner's rights, and in finding that Gardner does not allege any facts to show how and when the Carmodys came to an agreement with any other person to violate Gardner's rights through such conduct. Also, Gardner does not allege facts to suggest that the Carmodys ever threatened her. Thus, the Court should dismiss Gardner's claim in Count I against the Carmodys.

3. Category 3/ First Clause of § 1985(3)

If Gardner's claim in Count I arise under the first clause of § 1985(3), the Court should still dismiss for failure to state a claim.

To state a claim under the equal protection provisions (the first clause) of § 1985(3), a plaintiff must allege: (1) a conspiracy; (2) for the purpose of depriving another of the "equal protection of the laws, or of equal privileges and immunities under the laws;" (3) an act in furtherance of the conspiracy; and (4) an injury to a person or property, or the deprivation of a legal right. *Federer v. Gephardt,* 363 F.3d 754, 757-58 (8th Cir. 2004) (citing *Griffin,* 403 U.S. at 102-03. A plaintiff must also allege class-based animus[3] ***and*** the infringement of an independent federal right.[4] *Id*.

---

[3] In *Griffin, supra*, the Supreme Court held that the first clause of § 1985(3) requires an "intent to deprive of *equal* protection, or *equal* privileges and immunities, [which] means that there must be some racial, or perhaps otherwise class-based, invidiously discriminatory animus behind the conspirators' action." 403 U.S. at 102.

[4] Section 1985 grants no substantive, stand-alone rights, it only provides a remedy; the source of the right or laws violated must be found elsewhere. *United Bhd. of Carpenters & Joiners of Am. v. Scott,* 463 U.S. 825, 833 (1983); *Great Am. Fed. Sav. & Loan Ass'n. v. Novotny,* 442 U.S. 366, 376 (1979).

Here, Gardner does not adequately allege facts to establish any of the necessary elements of her § 1983(3) claim. Firstly, she fails to allege a conspiracy in that, as argued in Section III.B.2. above, she does not show any agreement or meeting of the minds between the Carmodys and any other defendants as required by *Kelly*. Secondly, even if she meets the first element, she alleges no facts to show that the Carmodys acted with others *for the purpose of depriving* Gardner (or anyone else) of a constitutional right to equal protection. Only in ¶¶ 108-110 of Gardner's Amended Complaint does she even remotely address these requirements to state a claim under § 1985. The allegations in those paragraphs, as argued above, do not meet the pleading standards of *Twombly*. But also, Gardner fails to allege *the aim of the conspiracy* was to interfere with protected rights. Assuming her allegations as true, Gardner at best establishes that the Carmodys and others "resist[ed] Gardner's agenda of reform and police accountability." Amended Complaint ¶ 66. However, the fact that two or more actors may have the same goal or intent does not establish a conspiracy. *See e.g.*, *Moeckel v. St. Louis Family Court*, No. 4:18-CV-01891-JAR, 2019 U.S. Dist. LEXIS 164820, at *7 (E.D. Mo. Sep. 26, 2019).

Thirdly, Gardner alleges no facts to the fourth element under *Federer* in that she does not sufficiently plead how she was injured or deprived of an independently-secured federal right. Fourthly, Gardner does not allege that she is, or how she is, a member of a class which suffers from invidious discrimination, so she fails to state a claim under the class-based animus requirement.

Thus, the Court should find that Gardner fails to state a claim for conspiracy under § 1985(3) and dismiss Count I against the Carmodys.

C.     Count II: No Violation of Gardner's Fourth Amendment Rights

Even if the Court declines to apply absolute immunity to the Carmodys, the Court should still dismiss Count II for another reason: Gardner has no personal, reasonable expectation of privacy in, or Fourth Amendment right against, the seizure of a government office server by Police Division Officers.

The Fourth Amendment guarantees "[t]he right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures." U.S. CONST. AMEND. IV. The "basic purpose of this Amendment… is to safeguard the privacy and security of individuals against arbitrary invasions by governmental officials." *Carpenter v. United States*, 138 S. Ct. 2206, 2213 (2018) (quoting *Camara v. Municipal Court of City and County of San Francisco*, 387 U.S. 523, 528 (1967)). The Supreme Court has repeatedly held that "Fourth Amendment rights are personal rights which, like some other constitutional rights, may not be vicariously asserted." *Rakas v. Illinois*, 439 U.S. 128, 133-34 (1978) (citations omitted) (quoting *Alderman v. United States*, 394 U.S. 165, 174 (1969). Therefore, "[a] person who is aggrieved by an illegal search and seizure only through the introduction of damaging evidence secured by a search of a third person's premises or property has not had any of his Fourth Amendment rights infringed." *Rakas*, 439 U.S. at 134 (citing *Alderman*, 394 U.S. at 174).

As such, to claim the protection of the Fourth Amendment, an individual must demonstrate that "[she] personally has an expectation of privacy in the place searched, and that [her] expectation is reasonable; *i.e.*, one that has 'a source outside of the Fourth Amendment, either by reference to concepts of real or personal property law or to

understandings that are recognized and permitted by society.'" *Minnesota v. Carter*, 525 U.S. 83, 87-88 (1998) (citations omitted) (quoting *Rakas*, 439 U.S. at 133-34, 143 n.12). Here, Gardner had no personal, reasonable expectation of privacy in the government office server seized by Police Division Officers, and her Fourth Amendment § 1983 claim therefore fails.

In *United States v. Nagle*, 803 F.3d 167 (3d Cir. 2015), an analogous case, the Third Circuit considered whether a corporate CEO had a reasonable expectation of privacy in electronic files seized from company computers and a shared network server. In *Nagle*, Joseph Nagle ("Nagle") was the President and Chief Executive Officer of Schuylkill Products Inc. ("SPI") and CDS Engineers, Inc. ("CDS"). *Id* at 174. In 2007, the FBI executed two search warrants at SPI and CDS's corporate offices, both of which were located in the same office compound. *Id* at 172. Together, SPI and CDS used a shared network server, which the FBI seized and imaged pursuant to the search warrants along with eleven employee computers. *Id* at 172. Nagle was criminally charged and moved to suppress the electronic files seized. *Id* at 175. The district court denied the motion to suppress because it concluded that Nagle did not have a personal expectation of privacy in the corporations' electronic files. *Id*. at 176. On appeal from his conviction, the Third Circuit affirmed – holding that Nagle failed to establish that he had a reasonable expectation of privacy in the seized files. *Id*. at 179. In so holding, the Third Circuit relied upon the Ninth Circuit's decision in *United States v. SDI Future Health, Inc.*, holding that "a reasonable expectation of privacy does not arise *ex officio*, but must be established with respect to the person in question." *Id*. at 177 (quoting *United States v. SDI Future Health, Inc.*, 568 F.3d 684, 696 (9th Cir. 2009)).

Here, as in *Nagle*, no personal expectation of privacy arises in Gardner by virtue of the office she holds, and Gardner has no personal, reasonable expectation of privacy in the government office server seized by Police Division Officers. Gardner alleges that, pursuant to a warrant issued by a neutral judge, City Police Division Officers seized the server and electronic files of the "Circuit Attorney's *Office*". Amended Complaint ¶¶ 93, 113 (emphasis added). According to Gardner, the information on the server included documents "covering many open police investigations." *Id*. at ¶ 85. Gardner does not allege that her private computer was seized or that any of her personal "papers" or "effects" were seized by Police Division Officers.[5] Neither does Gardner allege any facts from which this Court could reasonably infer that Gardner had a personal, reasonable expectation of privacy in the material seized sufficient to invoke the Fourth Amendment's protection of Gardner's individual privacy.

Of course, the Supreme Court has held that government employees do not lose their Fourth Amendment rights merely because they work for the government instead of a private employer. *O'Connor v. Ortega*, 480 U.S. 709, 717 (1987). In *O'Connor*, the Supreme Court considered whether a public employee had a reasonable expectation of privacy in his desk, office, and file cabinets at work. *Id.* at 712. There, Dr. Magno Ortega, a psychiatrist

---

[5] Gardner does allege that the seized server included "emails between the Circuit Attorney and her outside counsel for the investigation being done by Carmody," which she asserts are "obviously privileged." (Doc 1, ¶ 93). Gardner further alleges she entered contracts "to compensate the attorneys representing her with respect to Carmody's investigation." *Id*. at ¶ 100. It is not clear whether Gardner concedes by these allegations that she, in her individual capacity, expended public funds to pay her personal criminal defense attorneys.

employed by a state hospital, was placed on administrative leave pending investigation of charges that he had sexually harassed two hospital employees. *Id.* at 713. Hospital personnel assigned to conduct the investigation then entered Dr. Ortega's office and seized personal items from Dr. Ortega's desk and file cabinets, including a Valentine's Day card, personal photographs, a book of poetry, and medical records of private patients unrelated to Dr. Ortega's work as a public employee. *Id*. The Court ultimately held that Dr. Ortega had a reasonable expectation of privacy in the desks and filing cabinets of his "personal" office. *Id.* at 718-19.  In so doing, however, the Supreme Court relied on the fact that Dr. Ortega did not share his desk or file cabinets with any other employee and that all of the items seized were personal items unrelated to his work as an employee of the State. *Id.* at 718-19.

In stark contrast to *O'Connor*, the server seized by Police Division Officers was not Gardner's personal server containing solely personal documents. Amended Complaint ¶¶ 93, 113. In fact, Gardner does not allege that any of *her* possessions or personal information were seized at all – only that the Carmodys "carried out unreasonable searches and seizures of the Circuit Attorney's office and electronic files." *Id*. at 116. But, despite what Gardner may believe, the Circuit Attorney's Office does not belong to her. It is instead an agency of the City of St. Louis. The fact that Gardner does not own the seized server, while not alone controlling, further demonstrates that Gardner had no personal reasonable expectation of privacy in, or Fourth Amendment right against, the seizure of a government office server by Police Division Officers.

The Fourth Amendment's inclusion of the phrase "in their persons, houses, papers, and effects" reflects the Amendment's "close connection to property, since otherwise it

15

would have referred simply to 'the right of the people to be secure against unreasonable searches and seizures.'" *United States v. Jones*, 565 U.S. 400, 405 (2012). Indeed, for most of our Country's history and until the Supreme Court's 1967 decision in *Katz v. United States*, 389 U. S. 347, 351 (1967), common-law property rights were the primary measure of Fourth Amendment violations. *Carpenter v. United States*, 138 S. Ct. 2206, 2213 (2018) (citing *Jones*, 565 U.S. at 405). As such, the Fourth Amendment search doctrine focused on common-law trespass. *Id.* (citing *Jones*, 565 U.S. at 406, n.3). In *Byrd v. United States*, 138 S. Ct. 1518, 1526-27 (2018), the Supreme Court recently held that, while Fourth Amendment expectations of privacy need not be based on a common-law interest in real or personal property, "'property concepts' are instructive in determining the presence or absence of the privacy interests protected by that Amendment." *Id*.

Here, it is axiomatic that Gardner does not personally own the files and public records maintained by the "Office of the Circuit Attorney." But this Court need not rely on this obvious contention – it knows judicially that the City of St. Louis, through its treasurer, sets aside funds for "the circuit attorney for the payment of the incidental expenses in bringing parties and witnesses from other states or countries and in properly preparing causes for trial, attending trial on changes of venue, attending at the taking of depositions, in printing briefs, and appearing before the appellate courts of the state, and generally such expenses as [she] may be put to in the proper and vigorous prosecution of the duties of

[her] office." RSMo. § 56.530.[6] And again, this Court recently held, "[t]he Office of the Circuit Attorney is the equivalent of a county prosecutor's office, does not have the power to sue or be sued, and is not a cognizable legal entity separate from the Circuit Attorney in her official capacity and the City government of which it is an agency." *Stockley*, 2018 U.S. Dist. LEXIS 153392, at *7-9. In other words, this Court has held that the "Office of the Circuit Attorney" is, as a matter of law, an agency of the City of St. Louis. *Id*. As such, the Court should find that Gardner has no common-law personal property interest in the server and electronic files of the City agency she serves. Therefore, because property concepts are instructive in determining the presence or absence of privacy interests protected by the Fourth Amendment, the fact that the records seized in this case were not Gardner's weighs heavily against finding she has any Fourth Amendment privacy interest in them.

For all these reasons, Gardner had no personal, reasonable expectation of privacy in, or Fourth Amendment right against, the complained-of seizure of a government office server. Thus, she suffered no constitutional injury. As the Court knows, the first inquiry in any § 1983 suit is whether the plaintiff has been deprived of a right "secured by the Constitution and laws." *Baker*, 443 U.S. at 140. Here, Gardner fails to allege that she personally suffered any unreasonable search or seizure. In fact, Count II does not allege that Gardner suffered any injury at all – constitutional or otherwise. Even if Gardner had made such a conclusory allegation, the facts alleged in Gardner's Amended Complaint

---

[6] City of St. Louis pays the salaries of Gardner and all the employees of the Circuit Attorney's Office. § 56.540 RSMo.

demonstrate her Fourth Amendment rights were not violated and Count II must fail as a matter of law against the Carmodys.

Finally, the Court should find persuasive, if not preclusive, that Gardner already tried and failed at least four times in state court to thwart the February 21 search warrant. As Missouri's courts found, the Court should also find that her arguments against the search warrant lack merit and do not demonstrate any constitutional violation.

### D. Count III: Abuse of Process under § 1983 Fails as a Matter of Law

Even if the Court declines to apply absolute immunity to the Carmodys, the Court should still dismiss Count III against them for failure to state claim. Count III purports to state a § 1983 "abuse of process" claim against the Carmodys. In it, Gardner alleges "by instituting a baseless criminal investigation of Gardner, groundlessly seeking and obtaining the appointment of a Special Prosecutor, and searching and seizing the files of the Circuit Attorney without probable cause, [the Carmodys] made an illegal, improper, perverted and unwarranted use of legal process." Amended Complaint, ¶ 121. While the Eighth Circuit has never squarely addressed whether "Abuse of Process" is a cognizable claim under § 1983, this Court should hold that it is not and dismiss Count III for failure to state a claim upon which relief may be granted.

In *Fagnan v. City of Lino Lakes*, the Eighth Circuit "decline[d] to decide whether defendants may be liable for abuse of process pursuant to 42 U.S.C. § 1983." *Fagnan v. City of Lino Lakes*, 745 F.3d 318, 324 n.5 (8th Cir. 2014) (citing *Santiago v. Fenton*, 891 F.2d 373, 388 (1st Cir. 1989)). In *Santiago*, cited by the Eighth Circuit, the First Circuit held "that proof

of abuse of process alone cannot support a finding of liability under § 1983." *Santiago*, 891 F.2d at 388. It explained:

> The basis of the action for abuse of process is the motivation of the officer in making the arrest. The Supreme Court implicitly has rejected this as a theory of liability by its analysis of qualified immunity. If there was an objective basis for the arrest or prosecution, an officer would be entitled to qualified immunity regardless of his subjective motivation. Thus, the Supreme Court has in effect held that abuse of process—as a claim separate from a claim that there was no probable cause to make the arrest or institute the prosecution—is not cognizable as a civil rights violation under § 1983.

*Id*.

The Eighth Circuit's recent decision in *Johnson v. McCarver*, 942 F.3d 405 (8th Cir. 2019) further supports the notion that abuse of process is not actionable under § 1983. There, the Eighth Circuit held that *any* alleged pre-trial deprivation of liberty is squarely governed by the Fourth Amendment's prohibition on unreasonable seizures and seizures. *Id* at 410-11 (citing *Manuel v. City of Joliet*, 137 S. Ct. 911, 917 (2017) (abrogating *Moran v. Clarke*, 296 F.3d 638, 646-47 (8th Cir. 2002) and holding that pretrial detention without probable cause can violate the Fourth Amendment not only when it precedes, but also when it follows the start of legal process)). Accordingly, Gardner's claim that the Carmodys instituted a baseless criminal investigation against her and seized the Circuit Attorney's Office's files would only sound, if at all, in the Fourth Amendment. But, as argued in Section III.C. above, Gardner fails to state a Fourth Amendment § 1983 claim upon which relief may be granted.

Alternatively, even if abuse of process is cognizable under § 1983, the Court should nevertheless dismiss because Gardner alleges only conclusory, unadorned facts and threadbare recitals of elements which fail to satisfy the *Twombly/ Iqbal* pleading standards.

Thus, the Court should find that abuse of process is not a cognizable claim under § 1983 and dismiss Count III for failure to state a claim upon which relief may be granted.

## IV.     *Conclusion*

For all the foregoing reasons, the Court should enter an Order dismissing all counts of Gardner's Amended Complaint against Defendants Gerard Carmody, Patrick Carmody, and Ryann Carmody under Rule 12(b)(6) for failure to state claims for which relief can be granted.

Respectfully submitted,<br>
Julian Bush,<br>
CITY COUNSELOR<br>
<br>
/s/ J. Brent Dulle #59705(MO)<br>
Andrew D. Wheaton #65269(MO)<br>
Associate City Counselors<br>
City of St. Louis Law Department<br>
1200 Market Street<br>
City Hall Room 314<br>
St. Louis, Missouri 63103<br>
Phone: 314-622-4644<br>
DulleB@stlouis-mo.gov<br>
WheatonA@stlouis-mo.gov