**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF MISSOURI**
**EASTERN DIVISION**

| | |
|---|---|
| KIMBERLY M. GARDNER, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | )   Case No. 4:20-CV-00060 JAR |
| | ) |
| | ) |
| CITY OF ST. LOUIS, et al., | ) |
| | ) |
| Defendants. | ) |

**MEMORANDUM AND ORDER**

Plaintiff Kimberly Gardner ("Gardner"), the first African American woman elected Circuit

Attorney for the City of St. Louis (the "City"), brings this action against the City, the local police

union, a special prosecutor, and a private taxpayer, alleging a "racially motivated conspiracy to

deny the civil rights of racial minorities" by interfering with her efforts to crack down on police

misconduct and institute changes in the City's criminal justice system. Gardner further alleges

Defendants violated her Fourth Amendment rights and abused the criminal process to effectively

engineer her removal from office. Her 32-page complaint can best be described as a

conglomeration of unrelated claims and conclusory statements supported by very few facts, which

do not plead any recognizable cause of action. For the reasons stated herein, the complaint will be

dismissed without prejudice.

**I.      Alleged facts**

The following facts are taken from Gardner's amended complaint. (Amended Complaint

("AC"), Doc. No. 42). Additional specific facts will be discussed as necessary to address the parties'

arguments. In November 2016, Gardner was elected Circuit Attorney for the City of St. Louis. She

ran on a promise to redress historical inequality and rebuild trust in the criminal justice system

among communities of color. In her complaint, Gardner sets out statistical evidence of racial inequality in St. Louis policing and notes resistance from the SLPOA Defendants to her reform efforts. She describes the City Counselor's criminal investigation of former FBI agent William Don Tisaby – whom she hired to assist in her investigation of former Missouri Governor Eric Greitens – and the appointment of Gerard Carmody – who she alleges is a close friend and former law partner of the head of Greitens's legal defense team, Ed Dowd – as Special Prosecutor, as attempts to intimidate, silence, and sideline her. Gardner alleges the Carmodys abused their authority by conducting an unconstitutional search and seizure of electronic communications and files of the Circuit Attorney's Office and by "coopting" the Grand Jury Process, all in an effort to engineer her removal from office or curtail her ability to ensure the integrity of the criminal justice system. As for Lane, a retired St. Louis Police Department Officer, Gardner alleges he filed a taxpayer lawsuit against her "to prevent her from performing the contracts she entered into to compensate the attorneys representing her with respect to Carmody's investigation." Gardner contends the City Counselor has sided with Lane against her, despite the fact that she followed the protocols of the prior Circuit Attorney.

Count I of Gardner's complaint is directed against all Defendants and alleges a racist conspiracy under 42 U.S.C. § 1985(2)-(3) to thwart her reform efforts. Count II of the complaint is directed against Gerard Carmody, Patrick Carmody, and Ryann Carmody (collectively, "the Carmodys") and alleges an unreasonable search and seizure in violation of her Fourth Amendment rights under 42 U.S.C. § 1983. In Count III, Gardner alleges that the Carmodys and the City, by instituting a baseless criminal investigation of her, groundlessly seeking and obtaining the appointment of a Special Prosecutor, and searching and seizing the files of the Circuit Attorney

without probable cause, abused the legal process in violation of her civil rights under 42 U.S.C. § 1983.

Now before the Court are the following motions: Defendant/Counterclaim Plaintiff Charles A. Lane's ("Lane") Motion to Dismiss Count I of Plaintiff's First Amended Complaint (Doc. No. 43) and Motion to Strike Pursuant to Rule 12(f) (Doc. No. 45); the Carmodys' Motion to Dismiss All Counts (Doc. No. 48); the City's Motion to Dismiss All Counts (Doc. No. 50); and Defendants St. Louis Police Officers' Association and its Executive Director, Jeffrey Roorda's (collectively, the "SLPOA Defendants") Motion to Dismiss Count I of the First Amended Complaint Pursuant to Rule 12 (b)(6) and Motion to Strike (Doc. No. 54).[1] Gardner filed a consolidated memorandum in opposition to Defendants' motions to dismiss and motions to strike (Doc. No. 65) and Defendants replied (Doc. Nos. 74, 76, 78, 79). With leave of Court, Gardner filed a sur-reply in further opposition to the City and the Carmodys' motions to dismiss. (Doc. No. 83). The motions are, therefore, fully briefed and ready for disposition.

## II.    Legal standard

Federal Rule of Civil Procedure 8(a)(2) requires "a short and plain statement of the claim showing that the pleader is entitled to relief." The pleading standard of Rule 8 "does not require 'detailed factual allegations,' but it demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation." Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 555 (2007). To survive a motion to dismiss, a complaint must show that the pleader is entitled to relief, in order to give the defendant fair notice of what the claims are and the grounds upon which they rest. Id.

---

[1]     Gardner's amended complaint is the operative complaint. Accordingly, Lane's Motion to Strike Pursuant to Rule 12(f) (Doc No. 24) and the City's Motion to Dismiss all Counts and Motion to Strike (Doc. No. 34) directed to the original complaint are denied as moot.

Fed. R. Civ. P. 12(b)(6) provides for a motion to dismiss based on the failure to state a claim upon which relief can be granted. To survive a Rule 12(b)(6) motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to " 'state a claim to relief that is plausible on its face.' " Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009). In the complaint, a plaintiff must include sufficient factual information to provide the grounds on which his claims rest, and to raise a right to relief above a speculative level. Schaaf v. Residential Funding Corp., 517 F.3d 544, 549 (8th Cir. 2008) (citing Twombly, 550 U.S. at 555 & n.3). This obligation requires a plaintiff to plead "more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." Twombly, 550 U.S. at 555. A complaint must contain either direct or inferential allegations respecting all the material elements necessary to sustain recovery under some viable legal theory. Id. at 562. This standard "simply calls for enough fact to raise a reasonable expectation that discovery will reveal evidence of [the claim or element]." Id. at 556.

In reviewing the pleadings under this standard, the Court must accept all of the plaintiff's factual allegations as true and draw all inferences in the plaintiff's favor, but the Court is not required to accept the legal conclusions the plaintiff draws from the facts alleged. See Wiles v. Capitol Indem. Corp., 280 F.3d 868, 870 (8th Cir. 2002) (The Court is "free to ignore legal conclusions, unsupported conclusions, unwarranted inferences and sweeping legal conclusions cast in the form of factual allegations."); Retro Television Network, Inc. v. Luken Commc'ns, LLC, 696 F.3d 766, 768-69 (8th Cir. 2012). The Court may also properly consider public records, including court records, on a motion to dismiss. Levy v. Ohl, 477 F.3d 988, 991 (8th Cir. 2007).

### III.    Standing

As a threshold matter, Lane and the SLPOA Defendants argue that Gardner lacks standing to sue under § 1985 because she is not seeking to redress a violation of her own civil rights, but

rather the right of "all persons within the City of St. Louis to the equal protection of the laws." (AC at ¶¶ 108, 109). Gardner responds that § 1985 plainly authorizes private actions by officials whose job it is to secure equal justice for others, citing Brewer v. Hoxie Sch. Dist. No. 46 of Lawrence Cty., Ark., 238 F.2d 91  (8th Cir. 1956).

In Brewer, the directors and superintendent of an Arkansas school district sought a declaratory judgment and injunction under § 1985(2)-(3) against interference with the operation of its schools on a desegregated basis following the Supreme Court's decisions in Brown v. Board of Education, 347 U.S. 483 (1954) and 349 U.S. 294 (1955). The Eighth Circuit found the plaintiffs had a federal right in their personal capacity to be free from interference in upholding their oaths of office and constitutional duty to accord equal protection of the laws to all persons in their operation of the Hoxie schools. The Brewer court also held that plaintiffs could assert the rights of the school children under the equal protection clause of the Fourteenth Amendment. The Court said:

> The school board having the duty to afford the children the equal protection of the law has the correlative right, as has been pointed out, to protection in performance of its function. Its right is thus intimately identified with the right of the children themselves. The right does not arise solely from the interest of the parties concerned, but from the necessity of the government itself. Though, generally speaking, the right to equal protection is a personal right of individuals, this is only a rule of practice, which will not be followed where the identity of interest between the party asserting the right and the party in whose favor the right directly exists is sufficiently close.

Brewer, 238 F.2d at 104 (internal quotation marks and citations omitted).

Like the plaintiffs in Brewer, Gardner is under a state oath of office to support the Constitution of the United States and the Constitution of Missouri. See RS MO. 56.550. "It follows as a necessary corollary that [she] has a *federal right to be free from direct and deliberate interference with the performance of the constitutionally imposed duty*." Brewer, 238 F.2d at 99

5

(emphasis in the original). Since Gardner has alleged that a conspiracy whose object was to "deny the civil rights of racial minorities" injured her while she was seeking to vindicate those rights, the Court finds she has adequately alleged standing for her § 1985 claim. Thus, Lane and the SLPOA's motions to dismiss will be denied on this basis.

### IV.    Prosecutorial immunity

In support of their motion to dismiss, the Carmodys argue that as special prosecutors, they are absolutely immune from liability for all of Gardner's claims against them, citing <u>Powers v. City of Ferguson</u>, 229 F. Supp. 3d 894, 899-902 (E.D. Mo. 2017) and <u>Forste v. Hensley</u>, 405 F. App'x 94, 96 (8th Cir. 2010). Gerard Carmody of Carmody MacDonald P.C., was appointed special prosecutor by order of a Missouri state court pursuant to §§ 56.110 and 206.230 RS Mo., "to request subpoenas to aid in the Police Division's investigation and to pursue criminal charges and prosecution should the investigation reveal probable cause to believe criminal activity occurred in connection with [State v. Eric Greitens], Cause No. 1822-CR00642," with "the same powers as the duly elected prosecutor for the purposes of the matter for which he is appointed." (Doc. No. 78 at 10-11). As the Supreme Court has explained, determining whether absolute prosecutorial immunity is appropriate turns on "the nature of the function performed, not the identity of the actor who performed it." <u>Buckley v. Fitzsimmons</u>, 509 U.S. 259, 269 (1993) (quotation omitted).

Prosecutors enjoy absolute immunity for acts they perform in "initiating a prosecution and in presenting the state's case." <u>Imbler v. Pachtman</u>, 424 U.S. 409, 431 (1976). Prosecutors are absolutely shielded from liability when they take actions that are "intimately associated with the judicial phase of the criminal process," as opposed to investigative police work or administrative duties. <u>Reasonover v. St. Louis Cty., Mo.</u>, 447 F.3d 569, 579-80 (8th Cir. 2006); <u>see also Rodgers</u>

v. Knight, 781 F.3d 932, 939, 945 (8th Cir. 2015) (Absolute immunity applies to the decisions to file charges and the handling of evidence, including the retention of evidence.). Absolute prosecutorial immunity cannot be defeated by allegations of improper motive, malice, vindictiveness, or self-interest; and prosecutors are absolutely immune even if they present false, misleading, or perjured testimony, or withhold or suppress exculpatory evidence. Reasonover, 447 F.3d at 580; Sample v. City of Woodbury, 836 F.3d 913, 916 (8th Cir. 2016). See also Imbler, 424 U.S. at 428 ("[I]t is better to leave unredressed the wrongs done by dishonest officers than to subject those who try to do their duty to the constant dread of retaliation."). Prosecutors also enjoy absolute immunity from civil conspiracy charges where their alleged participation in the conspiracy consists only of otherwise immune acts. Reasonover, 447 F.3d at 580.

Gardner asserts that the Carmodys engaged in alleged misconduct in their role as special prosecutors, thereby waiving prosecutorial immunity. In particular, Gardner contends that Gerard Carmody acted as a witness rather than a prosecutor when he "requested an improper search warrant" without probable cause (Doc. No. 65 at 40), and that "by personally executing the search warrant, Ryann and Patrick Carmody stepped outside the 'core' functions of a prosecutor and into the role of a police officer, for which there can be no absolute immunity" (id. at 40-41).

A prosecutor's appearance in court in support of an application for a search warrant is protected by absolute immunity. See Burns v. Reed, 500 U.S. 478 (1991); Saterdalen v. Spencer, 725 F.3d 838, 842-43 n.2 (8th Cir. 2013) (absolute immunity applied to prosecutor's acts in reviewing and approving complaint). In Kalina v. Fletcher, 522 U.S. 118, 129-31 (1997), the Supreme Court determined that a prosecutor acted as a complaining witness, and was thus not entitled to absolute prosecutorial immunity, when she prepared a sworn affidavit attesting that the underlying facts to support an arrest warrant were true. Here, however, Gardner does not allege

that Carmody swore to the truth of facts alleged in the warrant application. In fact, according to Gardner, it is unclear who even requested the search warrant at issue. (AC at ¶ 87). Further, Gardner has only alleged that Ryann and Patrick Carmody were "present at times during execution of the warrant" by "approximately ten to fifteen officers from the Police Division" (id. at ¶ 92), which, without more, does not constitute performance of the function of a police officer.

Based on the above considerations, the Court finds the Carmodys were duly and properly appointed under the law and therefore entitled to absolute immunity for all acts performed in their prosecutorial roles. Accordingly, their motion to dismiss on this basis will be granted. But even if absolute prosecutorial immunity did not apply, Gardner's claims against the Carmodys fail for the reasons discussed below.

## V.      Motions to dismiss

### A. Count I: 42 U.S.C. § 1985(2)-(3) – Conspiracy to interfere with civil rights – against all Defendants

In Count I, Gardner alleges a conspiracy to interfere with civil rights under the "equal protection" provisions of 42 U.S.C. § 1985(2)-(3) against all Defendants.[2] (Doc. No. 65 at 22-23). To state a claim for conspiracy under § 1985, a plaintiff must allege: (1) a conspiracy; (2) for the

---

[2] Section 1985(2) provides a cause of action if:

> two or more persons conspire for the purpose of impeding, hindering, obstructing, or defeating, in any manner, the due course of justice in any State … with intent to deny to any citizen the equal protection of the laws, or to injure him or his property for lawfully enforcing, or attempting to enforce, the right of any person, or class of persons, to the equal protection of the laws[.]

Section 1985(3) provides a cause of action if:

> two or more persons conspire for the purpose of depriving, either directly or indirectly, any person or class of persons of the equal protection of the laws, or of equal privileges and immunities under the laws; or for the purpose of preventing or hindering the constituted authorities of any State or Territory from giving or securing to all persons within such State or Territory the equal protection of the laws[.]

purpose of depriving another of his civil rights; (3) an act in furtherance of the conspiracy; and (4) an injury to a person or property, or the deprivation of a legal right. McDonald v. City of Saint Paul, 679 F.3d 698, 706 (8th Cir. 2012); Federer v. Gephardt, 363 F.3d 754, 757-58 (8th Cir. 2004). The "purpose" element of the conspiracy requires the plaintiff prove a racial, or otherwise class-based "invidiously discriminatory animus." City of Omaha Employees Betterment Ass'n v. City of Omaha, 883 F.2d 650, 652 (8th Cir. 1989) (quoting Griffin v. Breckenridge, 403 U.S. 88, 102, 102 n. 10 (1971)); see also Harrison v. Springdale Water & Sewer Comm'n, 780 F.2d 1422, 1430 (8th Cir. 1986).

To survive a motion to dismiss aimed at a conspiracy claim under § 1985, a plaintiff must "allege with particularity and specifically demonstrate with material facts that the defendants reached an agreement." Johnson v. Perdue, 862 F.3d 712, 717-18 (8th Cir. 2017) (quotation omitted). This showing can be accomplished by pointing to facts suggesting that the defendants reached an understanding to violate the plaintiff's civil rights. Marti v. City of Maplewood, Mo., 57 F.3d 680, 685 (8th Cir. 1995) (citation omitted); Nelson v. City of McGehee, 876 F.2d 56, 59 (8th Cir. 1989) (quotation omitted). Although an express agreement between the purported conspirators need not be alleged, "there must be something more than the summary allegation of a conspiracy before such a claim can withstand a motion to dismiss." Mershon v. Beasely, 994 F.2d 449, 451 (8th Cir. 1993). See also Kelly, 813 F.3d at 1078 (dismissing conspiracy claim when plaintiff failed to allege any facts showing how and when defendants came to an agreement to violate her rights).

As evidence of a conspiracy against her, Gardner relies on her allegations of "coordinated conduct and interconnected relationships between Defendants and other key actors," combined with what she characterizes as "deviations from standard procedures." (Doc. No. 65 at 25-27).

9

Gardner points to actions taken by the SLPOA Defendants to harass and intimidate her and block her initiatives. She details the steps taken by the City and the SLPOA Defendants to ensure the appointment of a special prosecutor sympathetic to their goals. She notes that one of Greitens's chief defense lawyers is a longtime friend of Gerard Carmody, creating what she called a conflict of interest that made Carmody an improper choice to investigate a complaint filed by the Governor's legal team. In addition, Gardner describes the "irregular actions" taken by the Carmodys in concert with each other and those working at their direction, including the City through the Police Division, in pursuing the investigation of Tisaby, Gardner, and Gardner's office, including, *inter alia*, securing and executing a search warrant that violated the Fourth Amendment and seizing materials outside the scope of said warrant, all the while being encouraged by the SLPOA Defendants' "racist and slanderous rhetoric." Lastly, Gardner points to Lane's lawsuit, which she characterizes as a challenge to her right to be represented by counsel at City expense in the Carmodys' investigation of actions she undertook solely in her capacity as Circuit Attorney. She notes Lane's connections, as a former St. Louis police officer and member of the SLPOA, to the City – which supports Lane's lawsuit through City Counselor Julian Bush – and to Ed Dowd, and the fact that Lane donated to Hamacher's[3] campaign against her. Gardner further argues that because her primary agenda is to eliminate racial disparities in St. Louis policing, the opposition to her is almost certainly racially motivated.

Allegations of a conspiracy must be pled with sufficient specificity and factual support to suggest a meeting of the minds directed to an unconstitutional action. Nelson, 876 F.2d at 59. While those allegations may include circumstantial evidence, see Adickes v. S.H. Kress & Co., 398 U.S. 144, 158 (1970), Gardner presents no specific material facts, circumstantial or otherwise,

---

[3] Gardner is alluding to Patrick Hamacher, a former assistant circuit attorney, who ran and lost his bid for St. Louis Circuit Attorney against her in 2016.

to show that Defendants acted with each other for the purpose of depriving her – or anyone else – of a constitutional  right to equal protection. Her complaint is nothing more than a compilation of personal slights – none of which rise to a legal cause of action. See Palesch v. Mo. Comm'n on Human Rights, 233 F.3d 560, 570 (8th Cir. 2000) (plaintiff's conclusory allegations that the individual defendants "were out to get her" because of her race and gender failed to state a claim for conspiracy).

Gardner notes that several St. Louis police officers were cited in a 2019 expose by the Plain View Project as having posted racist and xenophobic items on Facebook, several dating back to 2014. None of the postings cited in Gardner's complaint mentions her or her office. Roorda is friends on Facebook with several of the officers and former officers cited by the Plain View Project. This is not, however, a basis for naming him as a defendant. Roorda often publicly criticizes Gardner, but that does not mean he is violating her civil rights. Likewise, the fact that the SLPOA has criticized Gardner publicly or taken actions she disagreed with does not establish, in any way, interference with her civil rights. The SLPOA represents police officers and will, in many cases, defend officers accused of civil rights violations, but this is not proof of a racist conspiracy.

Gardner's allegations against the Carmodys relate to their motive for instituting an investigation into alleged misconduct by her office as well as their purported "knowingly false representations" related to the search warrant. To the extent these disputed facts are true, "actions connected with initiation of prosecution, even if those actions are patently improper," are immunized. Schenk v. Chavis, 461 F.3d 1043, 1046 (8th Cir. 2006) (quoting Williams v. Hartje, 827 F.2d 1203, 1208 (8th Cir. 1987)). As for Lane, his  taxpayer lawsuit against Gardner does not

address any of her policy initiatives on racial justice, which belies her argument that the lawsuit is part of a racist conspiracy against her.[4]

Gardner's allegations represent the type of conclusory or formulaic recitations of the elements of a cause of action prohibited by the Rule 12(b)(6) pleading standard. Braden, 588 F.3d at 592 (quoting Iqbal, 556 U.S. at 677). Her conclusion that Defendants have collectively conspired against her and her agenda to take on racial inequality in St. Louis policing, without any specific factual support, fails to state a claim on which relief may be granted. Therefore, Count I will be dismissed.[5]

## B.   Count II: 42 U.S.C. 1984 – Fourth Amendment – against Carmody Defendants

Gardner alleges in Count II that the Carmodys violated her Fourth Amendment right to be free from unreasonable searches and seizures when they executed a search warrant of the Circuit Attorney's Office and its electronic files without probable cause. The Fourth Amendment protects individuals against "unreasonable searches and seizures by the government and protects privacy interests where an individual has "a reasonable expectation of privacy" in the place being searched. Smith v. Maryland, 442 U.S. 735, 743-44 (1979). "If there is no legitimate expectation of privacy,

---

[4]    The Court notes that on May 20, 2020, the state court entered a preliminary injunction enjoining Gardner and her office from expending any taxpayer generated revenue to retain outside legal counsel to represent her in the investigation of her office. (Doc. No. 74-2).

[5]    The Carmodys and the City separately argue that to the extent Gardner suggests they conspired with one another, her claim is barred by the intracorporate conspiracy doctrine, which protects corporate agents acting within the scope of their employment from civil conspiracy suits. Powers v. City of Ferguson, 229 F. Supp. 3d 894, 905 (E.D. Mo. 2017) (quoting L.L. Nelson Enterprises, Inc. v. Cty. of St. Louis, Mo., 673 F.3d 799, 812 (8th Cir. 2012)). Gardner maintains the doctrine does not apply where, as here, private-party defendants are alleged to have participated in the conspiracy. Courts in this district have concluded it is inappropriate to apply the doctrine at the dismissal stage given the standard of review. See Golden v. Moutray, No. 4:17 CV 284 DDN, 2018 WL 1784395, at *4 (E.D. Mo. Apr. 13, 2018); Powers, 229 F. Supp. 3d at 904-05; Anzaldua v. Ne. Ambulance & Fire Prot. Dist., No. 4:13 CV 1257 ERW, 2014 WL 46234, at *8 (E.D. Mo. Feb. 5, 2014), aff'd in part, rev'd in part on other grounds and remanded, 793 F.3d 822 (8th Cir. 2015). In any event, the Court need not address this argument given its dismissal of Gardner's conspiracy claim.

then there can be no Fourth Amendment violation." United States v. Bach, 310 F.3d 1063, 1066 (8th Cir. 2002). Notably, Gardner does not allege that her private computer or any of her personal files or records was seized.

In support of their motion to dismiss, the Carmodys argue that Gardner's claim fails because she has no personal, reasonable expectation of privacy in the server and electronic files of the Circuit Attorney's Office. The Court agrees. Gardner is an elected public official and the office of the Circuit Attorney is a public office. See United States v. Nagle, 803 F.3d 167, 177 (3d Cir. 2015) ("[A] reasonable expectation of privacy does not arise *ex officio,* but must be established with respect to the person in question.") (quoting United States v. SDI Future Health, Inc., 568 F.3d 684, 691, 696 (9th Cir. 2009)). The Court also takes judicial notice of the fact that the state court rejected Gardner's numerous challenges to the warrant, finding she failed to demonstrate a constitutional violation.[6]

The additional arguments Gardner raises in her responsive briefing are also without merit. First, Gardner asserts that given the breadth of the search warrant and its lack of nexus to the Tisaby or Grietens investigations, there could have been no probable cause for the warrant to issue unless the application included falsehoods and/or reckless omissions. Therefore, she argues, it is plausible to conclude that Gerard Carmody submitted deceptive information to obtain the search warrant in violation of the Fourth Amendment. Gardner does not allege any facts from which the Court could infer that Carmody knowingly made false or deceptive representations to the issuing court other than her unsupported conclusory statements.[7] Therefore, this argument is unavailing.

---

[6] State ex rel. Gardner v. Mullen, Case No. ED107691 (April 2, 2019); State ex rel. Gardner v. Mullen, Case No. SC97799 (Apr. 9, 2019); State ex rel. Gardner v. Mullen, Case No. ED107826 (Apr. 30, 2019).

[7] In their reply brief, the Carmodys argue Gardner's assertion that the warrant lacked probable cause is undercut by the fact that four months after the warrant issued, on June 14, 2019, Tisaby was indicted on

Next, Gardner contends that the personal participation of Patrick and Ryann Carmody in the execution of the search warrant, an investigative function, violated the Fourth Amendment. Gardner offers no legal support for her contention and, under these circumstances, mere presence does not rise to the level of investigative "police work" or administrative duties. Compare Burns, 500 U.S. at 493 (no absolute immunity for state prosecutor's giving of legal advice to police about an unarrested suspect); Buckley, 509 U.S. at 274 (no absolute immunity for prosecutors' alleged misconduct attempting to determine whether a boot print at the scene of the crime had been left by suspect); Kalina, 522 U.S. at 129-30 (no absolute immunity for prosecutor testifying about, or certifying as true, the facts underlying an application for an arrest warrant). As discussed above, see Sec. IV, without more, the argument that the Carmodys departed from their roles as prosecutors simply by being present while officers from the Police Division entered the Circuit Attorney's Office to execute the warrant fails.

Lastly, Gardner contends the Carmodys violated the Fourth Amendment by seizing and retaining materials that were outside the scope of the search warrant. The warrant at issue ordered that "law enforcement personnel, or other individuals assisting law enforcement personnel, executing this search warrant will make reasonable efforts to restrict their search to data falling within the categories of evidence containing the following search terms …" (Doc. No. 78-1). Again, Gardner does not allege any facts from which the Court could infer that Carmody violated the issuing court's order by retaining materials outside the scope of the warrant. When faced with unsupported conclusory statements, this argument must fail. Count II will be dismissed.

---

seven felony counts by the Grand Jury of the City of St. Louis – six counts of perjury and one count of tampering with physical evidence. (See Doc. No. 78-2).

**C.  Count III: 42 U.S.C. 1983 – Abuse of Process against the City and the Carmodys**

In Count III, Gardner alleges that the City Counselor's decision to seek the appointment of a Special Prosecutor was an act of the City's final policymaker for purposes of liability under Monell v. Dep't of Soc. Servs., 436 U.S. 658 (1978) (AC at ¶ 120), and that "by instituting a baseless criminal investigation of Gardner, groundlessly seeking and obtaining the appointment of a Special Prosecutor, and searching and seizing the files of the Circuit Attorney without probable cause, [the City and the Carmodys] made an illegal, improper, perverted and unwarranted use of legal process" to harass and intimidate her, obstruct her agenda, and engineer her removal from office (id. at ¶¶ 121-22).

**1.  Abuse of process**

To state a claim for abuse of process, a plaintiff must allege three elements: (1) an illegal, improper, perverted use of process, "a use neither warranted nor authorized by the process"; (2) done for an improper purpose; and (3) resulting in damage. Armetta v. Dewalt, No. 4:15CV1100 JCH, 2015 WL 7428538, at *4 (E.D. Mo. Nov. 23, 2015) (citing Arbors at Sugar Creek Homeowners Ass'n v. Jefferson Bank & Trust Co., Inc., 464 S.W.3d 177, 188 (Mo. banc 2015) (internal quotations and citation omitted). "Stated another way, the test as to whether there is an abuse of process is whether the process has been used to accomplish some end which is outside the regular purview of the process." Id. (citing Nichols v. Harbor Venture, Inc., 284 F.3d 857, 862 n. 4 (8th Cir. 2002) (quoting Ritterbusch v. Holt, 789 S.W.2d 491, 493 n.1 (Mo. banc 1990).

While the Eighth Circuit has declined to determine whether abuse of process is a cognizable claim under 42 U.S.C. § 1983, see Fagnan v. City of Lino Lakes, 745 F.3d 318, 324 n.5 (8th Cir. 2014) (citing Santiago v. Fenton, 891 F.2d 373, 388 (1st Cir. 1989)), Gardner urges the Court to follow the reasoning of the majority of circuits recognizing such claims, citing, *inter*

*alia*, <u>Cook v. Sheldon</u>, 41 F.3d 73, 80 (2d. Cir. 1994); <u>Rose v. Bartle</u>, 871 F.2d 331, 350 n. 17 (3d Cir. 1989); <u>Cramer v. Crutchfield</u>, 648 F.2d 943, 945 (4th Cir. 1981); <u>Erickson v. Pawnee Cty. Bd. of Cty. Comm'rs</u>, 263 F.3d 1151, 1155 (10th Cir. 2001). The Court need not address the issue. Even if the Eighth Circuit recognized such a claim under § 1983, Gardner's claim would fail on the facts alleged. <u>See</u> <u>Voyticky v. Vill. of Timberlake</u>, 412 F.3d 669, 676-77 (6th Cir. 2005) (If an abuse of process claim is "cognizable as a federal constitutional claim … the elements necessary to prove it would likely mirror those of state law.").

In assessing abuse of process claims, Missouri courts consider "whether the process has been used to accomplish some unlawful end or to compel the opposite party to do some collateral thing which he could not be compelled legally to do." <u>Lasco Foods, Inc. v. Hall & Shaw Sales, Mktg. & Consulting, LLC</u>, No. 4:08CV01683 JCH, 2009 WL 3834099, at *1 (E.D. Mo. Nov. 16, 2009) (quoting <u>Duvall v. Lawrence</u>, 86 S.W.3d 74, 85 (Mo. Ct. App. 2002)). Alternatively stated, "the privilege of process may not be used for an unlawful purpose such as using the litigation to extort money or anything of value from another." <u>Id</u>. (quoting <u>Owen v. Owen</u>, 642 S.W.2d 410, 414 (Mo. Ct. App. 1982)). However, a plaintiff is not liable if he has "done nothing more than pursue the lawsuit to its authorized conclusion regardless of how evil his motive might be." <u>Id</u>. (quoting <u>Crow v. Crawford & Co.</u>, 259 S.W.3d 104, 117 (Mo. Ct. App. 2008)). In other words, the mere fact that a plaintiff may have had an ulterior motive in bringing a suit is not sufficient to show abuse of process. <u>See</u> <u>id</u>. <u>See also</u> <u>Robinett v. Tarr</u>, No. 4:15-CV-1102 (CEJ), 2015 WL 5785828, at *2 (E.D. Mo. Oct. 2, 2015) (quoting <u>Wells v. Orthwein</u>, 670 S.W.2d 529 (Mo. Ct. App. 1984)) (emphasis added) (" 'If the action is confined to its regular and legitimate function in relation to the cause of action stated in the complaint there is no abuse *even if the plaintiff had an ulterior motive in bringing the action, or if he knowingly brought suit upon an unfounded claim.*' ").

Here, Gardner alleges the City and the Carmodys instituted a baseless criminal investigation of her to harass and intimidate her and obstruct her agenda. This Court has previously found these alleged ends are neither unlawful nor collateral. See Lasco, 2009 WL 3834099, at *2 (stating that perceived harassment and annoyance are unfortunate by-products of litigation and that the simple act of filing a lawsuit is not unlawful, even if filed for such reasons); Armetta, 2015 WL 7428538, at *5 (defendant failed to state a cause of action for abuse of process with her claim that plaintiffs used subpoenas to intimidate and harass her into giving false testimony). For this reason, Gardner's abuse of process claim fails. Moreover, Gardner fails to state a claim for municipal liability.

### 2. Municipal liability

A plaintiff seeking to impose liability on a municipality under § 1983 must identify an official "policy" or "custom" that caused the violation of the plaintiff's constitutional rights. Bd. of Cty. Comm'rs of Bryan Cty., Okl. v. Brown, 520 U.S. 397, 403 (1997). "The plaintiff must also demonstrate that, through its *deliberate* conduct, the municipality was the 'moving force' behind the injury alleged. That is, a plaintiff must show that the municipal action was taken with the requisite degree of culpability and must demonstrate a direct causal link between the municipal action and the deprivation of federal rights." Id. at 404 (emphasis in the original). See also Monell, 436 U.S. at 694 (policy must be the "moving force [behind] the constitutional violation").

Gardner fails to state a Monell claim against the City because she has not identified any unconstitutional policy pursuant to which the City Counselor allegedly violated her rights. The filing of a motion seeking the appointment of a special prosecutor, under the specific circumstances of this case, is simply not a "policy" for purposes of Monell liability. Gardner's claim also fails

because she has not plausibly alleged that the City's action was deliberately indifferent to her constitutional rights. Count III will be dismissed.

### VI.    Motions to strike

Lane and the SLPOA Defendants have also moved to strike portions of Gardner's complaint which they assert bear no relation to a legally cognizable claim against them. In light of the Court's ruling granting Defendants' motions to dismiss, the motions to strike will be denied as moot.

### VII.    Conclusion

For these reasons,

**IT IS HEREBY ORDERED** that Defendant/Counterclaim Plaintiff Charles A. Lane's ("Lane") Motion to Dismiss Count I of Plaintiff's First Amended Complaint [43] is **GRANTED** and his Motion to Strike Pursuant to Rule 12(f) [45] is **DENIED as moot**.

**IT IS FURTHER ORDERED** that Defendants Gerard Carmody, Patrick Carmody, and Ryann Carmody's Motion to Dismiss All Counts [48] is **GRANTED**.

**IT IS FURTHER ORDERED** that Defendant City of St. Louis's Motion to Dismiss All Counts [50] is **GRANTED**.

**IT IS FURTHER ORDERED** that Defendants Police Officers' Association and Roorda's Motion to Dismiss Count I of the First Amended Complaint Pursuant to Rule 12 (b)(6) [54] is **GRANTED** and their Motion to Strike [54] is **DENIED as moot.**

**IT IS FURTHER ORDERED** that Plaintiff Charles A. Lane's Motion to Strike Pursuant to Rule 12(f) [24] and Defendant City of St. Louis' Motion to Dismiss all Counts and Motion to Strike [34] are **DENIED as moot**.

A separate judgment of dismissal accompanies this Memorandum and Order.

Dated this 30th day of September, 2020.

                                                      **JOHN A. ROSS**
                                                      **UNITED STATES DISTRICT JUDGE**